**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Francis NOTO, Defendant,
Appellant.**

**No. 145, Docket 23835.**

United States Court of Appeals
Second Circuit.

Argued Oct. 3, 1955.

Decided Oct. 31, 1955.

Clark, Chief Judge, dissented.

John O. Henderson, U. S. Atty., Western District of New York (Alexander C. Cordes, Asst. U. S. Atty., of counsel), for plaintiff-appellee.

Charles J. McDonough, Buffalo, N. Y., for defendant-appellant.

Before CLARK, Chief Judge, and MEDINA and LUMBARD, Circuit Judges.

MEDINA, Circuit Judge.

The sole question before us on this appeal is whether the fixing of defendant's bail, before trial, at $30,000, constituted a clear abuse of discretion or involved other mistake of law, Stack v. Boyle, 1951, 342 U.S. 1, 13, 72 S.Ct. 1, 96 L.Ed. 3, as the fixing of bail is essentially a matter of judgment, involving the imponderable factors set forth in Fed.Rules Crim.Proc., 46(c).

The indictment, filed on November 8, 1954, charges a violation of the Smith Act, 18 U.S.C. § 2385, in that from in or about January, 1946, and continuously thereafter defendant was a member of the Communist Party of the United States of America, alleged to be a group of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence. It is further charged that he was such member knowing the said purposes of the Party, "and said defendant intending to bring about such overthrow by force and violence as speedily as circumstances would permit."

In his affidavit on the motion to reduce bail he stated that "in about October 1946 he accepted employment as Organizational Secretary of the Erie County Communist Party, which position he held until sometime in 1947 when he became Chairman of the Erie County Communist Party. In 1948 he became Western New York Organizer for the Communist Party and held that position until about September 1951." While he also states that his position as Western New York Organizer was terminated by the Party, and that he was relieved of his duties and moved away from Buffalo, he makes no claim that he ceased to be a member of

the Party or that he ceased to participate in its activities elsewhere.

When the matter of fixing bail came on for hearing Judge Burke made the customary inquiries concerning defendant's background, where he lived and the nature of his employment. Counsel for defendant proffered explanation of the period from September, 1951 to August 31, 1955, the date of his apprehension in Buffalo, by stating, "that the defendant within the last four years has lived with his wife and daughter and has been engaged in legitimate employment." But no information whatever was forthcoming as to his whereabouts or the nature of his employment during this four year period.

Two hearings were had, and the record discloses a careful and conscientious effort on the part of Judge Burke to weigh the various relevant factors, having in mind the defendant's right to bail in a reasonable and proper sum, but one which "will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant." Rule 46(c). That he says he is without funds and can only provide bail in the amount of $10,000, is merely one of the factors to be considered by the Court.

■ There is nothing before us even remotely to suggest that irrelevant matters were cast in the balance against defendant. Indeed, a scrutiny of this record makes it abundantly plain that Judge Burke pursued the proper method of evaluating the evidence before him.

The claim of some infringement of defendant's constitutional rights under the Fifth Amendment is wholly without merit. It was defendant's choice to withhold information as to his background, which is always of significance in fixing bail.

Affirmed.

CLARK, Chief Judge (dissenting).

Courts cannot control their intake of criminal causes, since prosecution is an executive function; but they can and must take the responsibility for even-handed justice as soon as they acquire jurisdiction over an accused. This means such fair treatment in all preliminary steps as well as on final judgment. For confinement as a result of a demand for excessive bail is as direct a restriction of personal liberties as is an ultimate judgment of imprisonment. Accordingly the Supreme Court has explicitly established the right of an accused to review of an order for high bail and has made it clear that we cannot avoid our independent judgment thereon by resting upon the action of a district judge, no matter how learned or experienced. Stack v. Boyle, 342 U.S. 1, 6, 7, 72 S.Ct. 1, 96 L.Ed. 3. Accordingly our duty to review is clear.

Now decision of an issue such as this requires a nice balance between the constitutional provision of the Eighth Amendment against excessive bail and the directions of F.R.Cr.P. rule 46(c), for bail such as "will insure the presence of the defendant" at trial. Of course this is a matter of adjustment to the facts of an individual case; obviously bail to insure the presence of a wealthy defendant will necessarily be larger than that of one without funds. On the other hand, stating an amount so large as to make sure beyond question that the defendant will be present at trial will mean confinement until then in violation of the constitutional admonition. But the setting of bail is naturally a recurring problem for committing magistrates and courts, and a general pattern does develop in the ordinary case of the impecunious accused, somewhere in the range of $5,000 for serious felonies and $10,000 for major ones. In the normal criminal prosecution, courts pause at sums in excess of this unless the easy financial condition of the defendant suggests an increase.

True, in the prosecutions under the Smith Act there has been much pressure for substantially higher bail and courts

have reacted variously in response thereto. There may be question how desirable particular treatment is here; against the substantial nature of the charge and the potential effects of the crime are the wide political ramifications not only in this country, but elsewhere, of these prosecutions when taken out of the general range of criminal law enforcement. See Stack v. Boyle, supra, 342 U.S. 1, 5, 6, 72 S.Ct. 1, 96 L.Ed. 3.[1] But in this case we do not need to consider these factors, since they are overshadowed by another one most important under the rule of criminal procedure cited, as well as in the light of the practicalities of the case. That is "the nature and circumstances of the offense charged," which here involves a charge based solely upon membership in the Communist Party—a feature of the Smith Act not yet authoritatively upheld. We are told that this is only the fourth prosecution under the membership clause, and that none of these cases have ever reached an appellate court. Anyone who examines the majority, the concurring, and the dissenting opinions in Dennis v. United States, 341 U.S. 494–592, 71 S.Ct. 857, 95 L.Ed. 1137, can easily satisfy himself of the far-reaching and unusual character of this particular legislation and the very substantial doubt as to its validity which must exist until the Supreme Court gives its authoritative interpretation.[2]

Under the circumstances stated, and particularly because of the legal issue involved, moderate bail would seem here indicated in the case of an American citizen without financial resources, living with his wife and one child, with another expected, and discovered while staying with his wife's parents without any attempt at concealment. The sole countervailing factor and the one really stressed

is the refusal of the accused and his counsel to respond to the prodding of the prosecutor and the court to tell of his activities and whereabouts during the period from 1951 to his indictment in late 1954. In various contexts this would be an important and persuasive factor, but it seems to me that in the light of the charge here it cannot properly be so considered. The opinion stresses the point that defendant makes no claim that he ceased to be a Party member or to participate in its activities. But this, I suggest, shows the reverse approach from normal which we are making in this case. Of course we do not know what claims he will make; and in the ordinary criminal prosecution he is not called upon to disclose his position, but may stand upon the presumption of innocence, with the obligation upon the prosecution to prove the crime. Just because these preliminary questions can be viewed quite naturally as ways of forcing him to prove the crime charged, I think we must find defendant's attitude more reasonable than if the crime in issue were a single isolated felony of an ordinary type. This is a continuing charge of Party membership up until the day the indictment was returned, and the accused and his counsel may properly and wisely feel that the real proof of a substantial part of the charge must come from the inferences to be drawn from what is shown of his activities and associations in recent times. I think the opinion herewith underestimates the force of his constitutional objection, which is that, while he may be allowed in form the benefit of the Fifth Amendment against self-incrimination, yet all force of that great privilege is denigrated by his facing confinement for resort to it. But I will pass that question of law, because it seems to me on the facts here

1. An example of judicial restraint appears in our Circuit in connection with the case of United States v. Silverman, now pending before the District Court of Connecticut, where the district judge reduced the bail of the defendants charged with active conspiracy from $40,000 and $20,000 to $15,000 and $10,000 respectively.

2. The contrast between the offense alleged here and the normal requirements of active conspiracy in Smith Act prosecutions is pointed up by the jury charge quoted and approved in Yates v. United States, 9 Cir., 225 F.2d 146, 166–168, but nevertheless taken for review by the Supreme Court on grant of certiorari, 76 S.Ct. 104.

that the circumstances make his conduct understandable in the light of the offense charged. And with a charge of such dubious legal validity, a command that he produce bail in the sum of $30,000 cash or $60,000 real property in my judgment is a mandate for excessive bail under the circumstances here present. We should order it reduced to not more than $10,000.